# Exhibit 1

☀ New Civil Liberties Alliance

July 23, 2024

**VIA EMAIL AND FIRST-CLASS MAIL**

Alberta E. Mills
Secretary of the Commission
U.S. Consumer Product Safety Commission
Washington, DC 20207
amills@cpsc.gov

     *Re:*     **Request by Dreamland Baby Co. for Retraction of Information Pursuant to Section 6(b)(7) of the Consumer Product Safety Act, 15 U.S.C. § 2055(b)(7), and 16 C.F.R. § 1101.52**

Dear Secretary Mills,

     Pursuant to the Consumer Product Safety Act ("CPSA"),[1] 15 U.S.C. § 2055(b)(7), and 16 C.F.R. § 1101.52, Dreamland Baby Co. ("Dreamland") requests that the Consumer Product Safety Commission ("CPSC") retract certain "inaccurate or misleading information which reflects adversely upon the safety of" Dreamland's weighted sleep swaddles and blankets and the class of infant weighted sleep swaddles and blankets in general.[2]

## BACKGROUND

     As you are aware, Dreamland develops, designs, produces, and sells infant and toddler products, including weighted sleep sacks, swaddles, and blankets.

     As recounted in Dreamland's May 9, 2024 letter to the Commission,[3] on November 8, 2023, the Commission convened a meeting to consider its Fiscal Year (FY) 2024 Operating Plan to discuss, *inter alia*, proposed amendments. Commissioner Richard Trumka, Jr. proposed Trumka Amendment 3, which would have required CPSC staff to "pursue a mandatory standard to address foreseeable

---

[1] All references to the CPSA are as amended, including the Consumer Product Safety Improvement Act of 2008 ("CPSIA").

[2] 15 U.S.C. § 2055(b)(7). Section 6(b)(7) is "a blanket provision applicable to all public disclosures by the Commission in any context." *Kaiser Aluminum & Chem. Corp. v. CPSC*, 414 F. Supp. 1047, 1057 (D. Del. 1976).

[3] *Available here*: https://nclalegal.org/wp-content/uploads/2024/05/2024.05.09-Litigation-Hold-Letter-to-CPSC-re-Dreamland-Baby.pdf.

risks posed by [weighted sleep products for infants]."[4] The amendment would also have required CPSC to "update all safe sleep messaging and guidance to incorporate recent advice on weighted infant sleep products from the Centers for Disease Control and Prevention and from the National Institutes of Health."

The Commission rejected Commissioner Trumka's proposal. As Chairman Alexander Hoehn-Saric observed, it was "[his] understanding that [CPSC] staff has not conducted the research necessary to draft a notice of proposed rulemaking in 2024[,]" and that "simply directing [the staff] to do it or wishing something to happen doesn't reflect the work that has to go into a successful rulemaking that ultimately reflects the science and can be sustained over time."[5] He continued by noting that "the staff is very aware of the issue and working diligently to assess and quantify safety risks associated with weighted blankets."[6] In her remarks, Commissioner Mary T. Boyle noted that a rulemaking was "at this time premature."[7] The amendment was rejected by a 3-1 vote.[8]

Despite the Chair's November 2023 admission that CPSC lacked the data to pursue a mandatory standard in FY 2024, the vote rejecting Trumka's proposed amendment to pursue a mandatory standard, and the Commission's ongoing work to determine the safety of these products, Commissioner Trumka, in his capacity as Commissioner, has issued a series of misleading and highly damaging statements, letters, videos, and posts on X (formerly Twitter) and Instagram maligning weighted swaddles and blankets. His adverse publicity campaign, done under the color of his position as a CPSC Commissioner, had the effect of a stop-sale directive for all infant weighted sleep products and blankets, including Dreamland's. As a direct result of the Commission's unlawful actions, through Comr. Trumka, Dreamland's business has suffered substantial financial harm. This occurred without the Commission's ever promulgating a mandatory standard or determining that infant weighted sleep products and blankets present an unreasonable risk of harm. Subregulatory, data-free abusive actions are unbecoming of an agency, like CPSC, entrusted with protecting the public.

Dreamland now formally requests that the Commission retract all of its inaccurate, misleading or otherwise unsupported statements which reflect adversely on Dreamland's products, including those statements made by Commissioner Trumka—which suffer from the same defects.

## CPSC'S STATUTORY AND REGULATORY AUTHORITY

CPSC, like all administrative agencies, is a "creature[] of statute."[9] CPSC "accordingly possess[es] only the authority that Congress has provided."[10] Under CPSA, the Commission is charged with (1) "protect[ing] the public against unreasonable risks of injury associated with consumer

---

[4] CPSC, Minutes of Commission Mtg. 13 (Nov. 8, 2023), https://www.cpsc.gov/s3fs-public/Comm-Mtg-Min-FY-2024-Operating-Plan-Decisional.pdf?VersionId=GDwWSUy29P7SN9MpqVVWdX5Nn9xe36Vm

[5] CPSC, Commission Meeting FY24 Operating Plan Decisional 20:28−20:55 (Nov. 9, 2023), https://www.youtube.com/watch?v=LHemQpZZBN0&list=PLPbI8bR243fHmCYA1a7pZ4l4wzhYjla_V&index=6.

[6] Id.

[7] Id. at 21:52−22:05.

[8] CPSC, Minutes of Commission Meeting at 13. One seat was vacant at the time of the vote. It has since been filled by Commissioner Douglas Dziak.

[9] NFIB v. OSHA, 595 U.S. 109, 117(2022).

[10] Id.

products;" (2) "assist[ing] consumers in evaluating the comparative safety of consumer products;" (3) "develop[ing] uniform safety standards for consumer products and to minimize conflicting State and local regulations;" and (4) promot[ing] research and investigation into the causes and prevention of product-related deaths, illnesses, and injuries[.]"[11] The Act provides a general regulatory framework for many consumer products and authorizes the Commission to fulfill its mission in several ways, including: collecting, maintaining, and analyzing incident data; conducting product safety research, investigations, and product testing; assisting with the development of voluntary product safety standards; promulgating consumer product safety standards; addressing imminently hazardous products; and, banning hazardous products.[12]

Certain tools like promulgating mandatory safety standards and addressing or banning hazardous products require the Commission to follow a rigorous process set out by statute and CPSC's implementing regulations. Just as the Commission is bound by the authority granted to it in the CPSA, so too it is bound by the regulations it has chosen to promulgate. [13]

"The Commission is authorized to 'promulgate consumer product safety standards' establishing performance or warning requirements for consumer products."[14] In promulgating standards the Commission must follow the procedures set forth by both the CPSA and the Administrative Procedure Act ("APA").[15] The information the Commission relies on, and discloses, is further subject to the Information Quality Act ("IQA"), 2 Pub. L. 106–554, § 515, and information quality guidelines issued by the Commission and the Office of Management and Budget.[16] As such, the Commission is not free to promulgate mandatory safety standards at any time. Instead, it must follow the CPSA and its implementing regulations, all while adhering to the quality restrictions relating to the data it relies on in making its decisions.

Under the CPSA, "[t]he Commission must refrain from issuing a safety standard if: (i) compliance with the voluntary standard 'would eliminate or adequately reduce the risk of injury addressed'; and (ii) it is likely that the industry will substantially comply with the voluntary standard."[17] Additionally, safety standard requirements "shall be reasonably necessary to prevent or reduce an unreasonable risk of injury associated with such product."[18] When it chooses to promulgate a rule, the Commission must make several determinations—all backed by evidence and data. For example, CPSC must "express … the risk of injury which the standard is designed to eliminate or reduce."[19] In doing so, the Commission must "consider relevant available product data including the results of research,

---

[11] 15 U.S.C. § 2051(b).

[12] *See generally* 15 U.S.C. §§ 2054, 2056, 2058, 2061, 2064.

[13] *See Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003) (agencies must follow their own promulgated policies); *Steenholdt v. FAA*, 314 F.3d 633, 639 (D.C. Cir. 2003) (noting that federal agencies must follow their own rules); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

[14] *In the Matter of Leachco*, CPSC Docket No. 22-1, Slip op. at 37 (July 3, 2024) (quoting 15 U.S.C. § 2056(a)), *notice of appeal filed* July 10, 2024.

[15] *Window Covering Manufacturers Ass'n v. CPSC*, 82 F.4th 1273, 1279 (D.C. Cir. 2023).

[16] *See generally*, CPSC, *Information Quality Guidelines* (last accessed July 23, 2024), https://www.cpsc.gov/Research--Statistics/Information-Quality-Guidelines (noting that CPSC is a "data-driven agency").

[17] *Id.* (quoting 15 U.S.C. § 2056(b)(1)).

[18] 15 U.S.C. § 2056(a).

[19] 15 U.S.C. § 2058(e).

development, testing, and investigation activities conducted generally and pursuant to [the CPSA]."[20] The Commission must also "conduct a 'final regulatory analysis' — *i.e.*, a cost-benefit analysis — before promulgating a safety standard. The analysis must detail costs, benefits, and alternatives to the proposed standard, and must address any issues raised by commenters."[21] There must also be a "host of findings" the Commission must make before promulgating a rule, many of which must be supported by data and evidence.[22]

The CPSA also permits the Commission to ban hazardous products which present "an unreasonable risk of injury[.]"[23] Banning a product requires the Commission to "find that the product at issue presents an unreasonable risk of injury and that no feasible safety standard would adequately protect the public from it. … In banning products, the CPSC must follow the procedures that govern its general power to promulgate safety standards."[24]

In addition to governing how CPSC regulates consumer products, CPSA also limits how the Commission, individual Commissioners, and staff may discuss consumer products.[25] In amending CPSA to include Section 6, 15 U.S.C. § 2055, "Congress adopted safeguards specifically designed to protect manufacturers' reputations from damage arising from improper disclosure of information."[26] Section 6(a), 15 U.S.C. § 2055(a), limits disclosures of confidential business information received or obtained by the Commission. Section 6(b), 15 U.S.C. § 2055(b), places additional disclosure restrictions on the CPSC and "applies to <u>any information</u> from which the public can readily ascertain the identity of a manufacturer or private labeler of a consumer product."[27] In adopting Section 6(b)(1)'s provisions, "Congress sought to guard against the Commission's destroying a manufacturer's reputation by releasing inaccurate and unfair information about the company's product."[28]

The Commission must "take reasonable steps to assure" that before it publicly discloses information that identifies a manufacturer or private labeler that such information "is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of [the CPSA]."[29] Moreover, CPSA requires notice *before* such statements are made and an opportunity for a company to respond *before* the information is made public.[30] Section 6(b) also permits a company receiving notice of a pending information release to bring an action enjoining disclosure.[31]

Section 6(b) also requires the Commission to "establish procedures" that are "designed to ensure that" the information it discloses that "reflects on the safety of a consumer product or class of

---

[20] 15 U.S.C. § 2058(e).
[21] *Window Covering Manufacturers Ass'n*, 82 F.4th at 1279 (citing 15 U.S.C. § 2058(f)(2)).
[22] *Finnbin, LLC v. CPSC*, 45 F.4th 127, 131 (D.C. Cir. 2022) (citing 15 U.S.C. § 2058(f)).
[23] 15 U.S.C. § 2057; *see also Leachco*, CPSC Docket No. 22-1, Slip op. at 37–38.
[24] *Finnbin, LLC v. CPSC*, 45 F.4th 127, 131 (D.C. Cir. 2022) (citing 15 U.S.C. § 2057); *see also Leachco*, CPSC Docket No. 22-1, Slip op. at 37–38.
[25] 15 U.S.C. § 2055.
[26] *CPSC v. GTE Sylvania, Inc.*, 447 U.S. 102, 111–12 (1980) (discussing § 2055(a)).
[27] CPSC, *CPSA Section 6(b) FACT SHEET* (last accessed July 23, 2024), <u>https://www.cpsc.gov/s3fs-public/pdfs/blk_pdf_CPSA6bFactSheet.pdf</u> (emphasis in original).
[28] *Reliance Elec. Co. v. CPSC*, 924 F.2d 274, 275 (D.C. Cir. 1991).
[29] 15 U.S.C. § 2055(b)(1).
[30] 15 U.S.C. § 2055(b)(1).
[31] 15 U.S.C. § 2055(b)(3)(A).

consumer products, whether or not such information would enable the public to ascertain readily the identity of a manufacturer or private labeler, … is accurate and not misleading."[32] Those adopted procedures further bind the Commission in how it may disclose information.[33]

Among those procedures, the Commission has determined that Section 6(b)(1)'s "notice and analysis provisions" apply if the information being disclosed (1) "pertain[s] to a specific product which is either designated or described in a manner which permits its identity to be ascertained readily by the public[;]" (2) is "obtained, generated or received by the Commission as an entity or by individual members, employees, agents, contractors or representatives of the Commission acting in their official capacities[;]" (3) "[t]he Commission or its members, employees, agents or representatives" proposes to publicly release the information; and, (4) "[t]he manner in which the product is designated or described in the information must permit the public to ascertain readily the identity of the manufacturer or private labeler."[34]

The Commission has determined that the public is able to readily ascertain the identity of a manufacturer or private labeler "when a reasonable person receiving the information in the form in which it is to be disclosed and lacking specialized expertise can readily ascertain from the information itself the identity of the manufacturer or private labeler of a particular product."[35]

The Commission is also required to assure that the information it releases is accurate.[36] The Commission considers certain actions as sufficiently reasonable steps which assure the accuracy of information, including when "Commission staff or a qualified person or entity outside the Commission … conducts an investigation or an inspection" or "Commission staff conducts a technical, scientific, or other evaluation" corroborating the information being disclosed.[37]

Before publicly disclosing any information that readily identifies a manufacturer, CPSC must take reasonable steps to assure the information's release is "fair in the circumstances."[38] CPSC has determined that certain steps are reasonable to take to assure fairness, including providing the "manufacturer's or private labeler's comments" along with the public disclosure or "accompany[ing] the disclosure of information with an explanatory statement … [and] to disclose any other relevant information in its possession" or "limit[ing] the form of disclosure" or "delay[ing] disclosure[.]"[39]

Congress determined that there must be statutory guardrails on the Commission's processes. Those guardrails are reinforced by the Commission's implementing regulations. Together, these processes protect consumers and companies alike by encouraging the collaborative development of voluntary standards, providing due process protections for companies, fostering public input in standards development, and supporting a commitment to high quality data- and evidence-based determinations. They also place certain limitations on what the Commission, including individual Commissioners or staff, may say when disclosing information, and how they may do so.

---

[32] 15 U.S.C. § 2055(b)(6).
[33] *See* 16 C.F.R. part 1101.
[34] 16 C.F.R. § 1101.11.
[35] 16 C.F.R. § 1101.13.
[36] 15 U.S.C. § 2055(b)(1), (7).
[37] 16 C.F.R. § 1101.32.
[38] 15 U.S.C. § 2055(b)(1).
[39] 16 C.F.R. § 1101.33.

## STATEMENTS IDENTIFIED FOR AND REASONS SUPPORTING RETRACTION

As relevant here, the Commission and Commissioner Trumka appear to have had no factual or legal basis to make the statements identified below. As discussed above, the Commission is a creature of statute, and it is limited by the powers Congress granted to it. The CPSA, IQA, APA and the Commission's regulations thus demarcate the boundaries of the Commission's ability to act.

The CPSA makes it clear that the Commission may only act when it has adequate evidence and data to do so. When the Commission acts, including by providing information to the public, it must meet the procedural and evidentiary requirements of the CPSA and its implementing regulations. As relevant here, the Commission has not promulgated a mandatory standard regarding the weighted properties of weighted infant swaddles and blankets. On information and belief, the Commission did not have the required evidence or data to promulgate such a rule.[40] Likewise, the Commission has not moved to ban such products. Again, on information and belief, the Commission does not have the required evidence or data to institute such a ban. Thus, any statements reflecting the safety of such products is without a statutorily sufficient basis. It is unclear how, if the Commission lacks data to promulgate a standard, it can speak accurately and not misleadingly about the safety of these products.

Further, in disclosing the information below, both the Commission and Commissioner Trumka failed to meet Section 6(b)'s procedural requirements. At no time was Dreamland given notice of any adverse statements made privately or publicly about its products, despite the public being readily capable of ascertaining its identity from the disclosures because the market for weighted infant swaddles is predominated by Dreamland and one other manufacturer. Moreover, the letters Comr. Trumka sent to retailers, *see infra* B.3., each included a hyperlink to a product search for weighted infant sleep products on the respective retailer's website. Because Dreamland's products, including weighted swaddles, were for sale on those websites at the time the letters were sent, a reasonable person receiving that information could easily identify Dreamland as the manufacturer.[41] As discussed below, Comr. Trumka's April 15 statement and his letters to retailers cite a *Washington Post* article specifically identifying Dreamland and its products.

Regarding infant products, there are few things conceivably more harmful to say or suggest than that a product is unsafe or poses a threat to an infant's safety. In some instances, Commissioner Trumka went even further, falsely suggesting that weighted swaddles and blankets pose a risk of death or heightened risk of Sudden Infant Death Syndrome ("SIDS"). In this instance it appears that the CPSC's procedures to assure that information is accurate, not misleading, and fair in the circumstances have been completely ignored.[42] Their statements reflect adversely on Dreamland's products and the class of infant weighted sleep swaddles and blankets in general. Their statements, discussed below should be retracted, regardless of whether Dreamland's identity was readily identifiable.[43]

---

[40] CPSC, Com'n Mtg. FY24 Operating Plan Decisional 20:28−20:55 (Nov. 9, 2023), https://www.youtube.com/watch?v=LHemQpZZBN0&list=PLPbI8bR243fHmCYA1a7pZ4l4wzhYjla_V&index=6.

[41] 16 C.F.R. § 1101.13.

[42] 16 C.F.R. §§ 1101.1(a), 1101.32, 1101.33.

[43] Dreamland has attempted to identify all publicly available communications channels in which the challenged statements, or substantially similar ones, were made. Despite this, Dreamland has reason to believe that additional unlawful disclosures may have been made.

### A. CPSC'S STATEMENT REGARDING WEIGHTED BLANKETS AND SWADDLES IS MISLEADING AND INACCURATE

Sometime after November 8, 2023, the "CPSC's 'dos and don'ts' for baby sleep spaces" webpage was edited to add: "**Don't** use weighted blankets or weighted swaddles*."[44,45] The "*" footnotes to webpages run by the National Institutes for Health ("NIH")[46] and the Centers for Disease Control and Prevention ("CDC").[47] An image of CPSC's statement is attached as Attachment 1.

Dreamland believes CPSC's statement is misleading. CPSC is an evidence- and data-driven administrative agency.[48] Accordingly, consumers, particularly parents, expect that when the Commission makes statements about or recommendations regarding the safety of a product or a class of products that the Commission is doing so based on its own findings, analysis, and data. However, in this instance, CPSC has not spoken from a place of either evidence or data, and instead relies on references to statements by other government agencies—that are not charged with assessing the safety of consumer products.

The CPSA permits the Commission to act only if it has adequate evidence and data to do so. The Commission has not proposed, let alone promulgated a mandatory standard regarding weighted infant sleep products. It likewise has not banned any such product. On information and belief, the Commission lacks the required data and evidence to support either action. Its statement suggesting that this class of products is unsafe for sleep misleads consumers and parents into believing CPSC has investigated or evaluated the recommendation and that it has a sufficient basis for making that recommendation. Thus, CPSC's statement misleads consumers into believing that its recommendation is backed by the Commission's findings, analysis, and data when it is not.

The Commission's statement relies on links to statements by the CDC and NIH. However, it is unclear on what basis NIH and CDC made their statements as neither webpage cites any specific data, information, or studies regarding weighted infant swaddles.[49] These linked references do not meet the

---

[44] At the Commission's November 8, 2023 meeting to consider its Fiscal Year (FY) 2024 Operating Plan Chair Hoehn-Saric noted that "[CPSC] staff is already working on how to modify safe sleep guidance to account for the fact that both NIH and CDC is warning against the use of … weighted wearables for infants" and that CPSC would be updating its guidance. CPSC, *Commission Meeting FY24 Operating Plan Decisional* 20:28–20:55 (Nov. 9, 2023), https://www.youtube.com/watch?v=LHemQpZZBN0&list=PLPbI8bR243fHmCYA1a7pZ4l4wzhYjla_V&index=6.

[45] https://www.cpsc.gov/SafeSleep (emphasis in original).

[46] The linked NIH webpage states the following: "Things in the sleep area can pose dangers for baby, especially if they are: … Weighted (e.g., weighted blankets, weighted swaddles)[.]" NIH, *Safe Sleep Environment for Baby* (last accessed July 23, 2024), https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment.

[47] The linked CDC webpage states the following: "Products labeled as weighted—including weighted sleepers, swaddles, sleep sacks, and blankets—are **not safe** for infants." CDC, *Helping Babies Sleep Safely* (last accessed July 23, 2024), https://www.cdc.gov/reproductive-health/features/babies-sleep.html?CDC_AAref_Val=https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/index.html (emphasis in original).

[48] CPSC, *Information Quality Guidelines* (last accessed July 23, 2024), https://www.cpsc.gov/Research--Statistics/Information-Quality-Guidelines.

[49] CDC's website links to an article in the PEDIATRICS journal which refers only to "soft bedding[.]" That term includes a host of different products none of which is specifically differentiated or identified in publicly available data. Sharyn E. Parks, et al., *Risk Factors for Suffocation and Unexplained Causes of Infant Deaths*, PEDIATRICS

Commission's standards for assuring the accuracy of information it states under its regulations. Those regulations require "Commission staff or a qualified person or entity outside the Commission … [to] conduct[] an investigation or an inspection" or for "Commission staff [to] conduct[] a technical, scientific, or other evaluation" corroborating the information being disclosed, here that weighted products should not be used for sleep and that using such products are unsafe.[50] But the Commission did neither of those things prior to issuing its recommendation about this class of products. On information and belief, neither CDC nor NIH based their statements on any data or evidence specific to weighted swaddles or blankets but relied only on a perceived lack of safety data.

Consumers put their trust in CPSC to base its decisions and statements on evidence and data. Anything less than that, as has occurred here, undermines trust in the Commission and the confidence of consumers. A retraction of this misleading and inaccurate statement is warranted.

### B. COMMISSIONER TRUMKA'S STATEMENTS ARE MISLEADING AND INACCURATE

Dreamland is particularly concerned about Commissioner Trumka's adverse publicity campaign against its products and the class of weighted infant swaddles more generally. Under the law, Comr. Trumka was required to provide notice to Dreamland of his information disclosures and give it an opportunity to respond before those disclosures were made. He provided neither. He was also required to assure that the information he was disclosing was accurate, not misleading, and fair under the circumstances.[51] As discussed below, he did not.

Even if Commissioner Trumka's statements did not specifically identify Dreamland or its products, he was, and remains, under a legal obligation to ensure that his statements are accurate and not misleading in the circumstances.[52] As shown below, Comr. Trumka, or his staff, has systematically ignored the law. While he is free to disagree with the restrictions Congress has placed on him by virtue of his position as a commissioner, he is not free to disregard binding laws and regulations.[53]

Dreamland has been able to identify publicly disseminated statements made by Commissioner Trumka below, but it is not under the illusion that it has identified the entire universe of his or his staff's unlawful disclosures of the same or substantially similar inaccurate, misleading, and adverse information.

In his letters to retailers described below, Commissioner Trumka closed with the following: "Considering these serious safety concerns, I would like to speak with a representative of your

---

3 (Dec. 5, 2022), https://doi.org/10.1542/peds.2022-057771 ("Soft bedding included soft objects like stuffed animals, loose bedding, bumper pads, or other objects that could increase the risk for suffocation.").

[50] 16 C.F.R. § 1101.32.

[51] 15 U.S.C. § 2055(b)(1).

[52] 15 U.S.C. §§ 2055(b)(6), (7).

[53] Commissioner Trumka has referred to Section 6 as a "Gag Rule" and voiced his displeasure with it. *See* Comm'r Richard Trumka, *CPSC Must Fix Gag Rule Regulations so Consumers Can Protect Their Families* (Feb. 8, 2023), https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/CPSC-Must-Fix-Gag-Rule-Regulations-so-Consumers-Can-Protect-Their-Families; *but see* Comm'r Feldman, *Statement of Commissioner Peter A. Feldman: CPSC Proves Once Again that Section 6(b) is not a Gag Rule* (Aug. 16, 2023), https://www.cpsc.gov/About-CPSC/Commissioner/Peter-A-Feldman/Statement/Statement-of-Commissioner-Peter-A-Feldman-CPSC-Proves-Once-Again-that-Section-6b-is-not-a-Gag-Rule.

company to discuss a simple question: does [retailer] really want to continue selling these products to its consumers? Your consumers place a great deal of trust in your hands."[54] It is of little surprise then, that companies presented with Comr. Trumka's misleading and inaccurate statements yielded to his requests. By subverting the Commission's processes, he effectively stopped sale of virtually all infant weighted sleep products and blankets, including Dreamland's. While the Commission should retract the identified statements below because they violate the protections afforded by the CPSA and by CPSC's regulations, Comr. Trumka's statements should be retracted for another reason: allowing his statements to remain encourages him, and future Commissioners, to undertake such subregulatory attacks against any industry or company or product they dislike.

### 1. January 26, 2024 X Post

On January 26, 2024, Commissioner Trumka posted a Consumer Reports article entitled "Weighted blankets are dangerous for babies, doctors warn" on his X account (@TrumkaCPSC) saying that CPSC along with other government agencies and the American Academy of Pediatrics ("AAP") were "all in agreement when it comes to weighted infant sleep products: they pose serious threats to the lives of babies. Do NOT use them for sleep."[55] That article specifically identified Dreamland and its products.[56]

Dreamland believes Commissioner Trumka's post is inaccurate and misleading and reflects adversely on Dreamland's products. First, as discussed above regarding CPSC's statement, Comr. Trumka's post misleadingly suggests to consumers that his statement and recommendation is backed by CPSC's findings, analysis, and data. After all, the account handle he posted from, @TrumkaCPSC, specifically invokes his position as Commissioner. Under the CPSA and CPSC's regulations, the Commission may only act—including determining whether a product poses an unreasonable risk of injury—when it follows the processes prescribed by law.[57] That determination necessarily requires substantial evidence and data to support it. But, as Comr. Trumka is aware, no such determination was made related to weighted infant sleep products. It also misleadingly misrepresents CPSC's statements against using such products by interjecting that such weighted infant sleep products "pose serious threats to the lives of babies."—a statement that the Commission itself has not made.

As with CPSC's statement, the references to other agencies' or organizations' statements do not meet the Commission's standards for assuring the accuracy of information in a disclosure. Nor can it be said that release of this information was "fair" under the circumstances.[58] There was no explanatory statement from the Commission regarding his disclosure. Because Dreamland was not notified of the disclosure, its comments were not provided with the disclosure.

Even though Dreamland and its products were explicitly identified in the article that Commissioner Trumka reposted, Dreamland was not presented with any notice of the disclosure nor

---

[54] *See, e.g.,* Attachment 8 (Letter to Brian Cornell (Target) at 2).

[55] @TrumkaCPSC, X.com (Jan. 26, 2023 at 12:00 PM), https://x.com/TrumkaCPSC/status/1750926680267333669 (post attached as Attachment 2).

[56] Lauren Kirchner, Consumer Reports, *Weighted blankets are dangerous for babies, doctors warn,* WASH. POST (Jan. 22, 2024 at 2:00 p.m. EST), https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe.

[57] 15 U.S.C. §§ 2056, 2057.

[58] 15 U.S.C. § 2055(b)(1); 16 C.F.R. § 1101.33.

given an opportunity to respond prior to the statement being made, as required under the CPSA and its implementing regulations. A reasonable person receiving this information, even one lacking specialized expertise, would readily identify Dreamland from Comr. Trumka's disclosures.

### 2. April 15, 2024 Statement and Statement Video on X and Instagram

On April 15, 2024, Commissioner Trumka posted a statement on the CPSC website, an accompanying statement on CPSC letterhead, and a video statement on his official X and Instagram accounts. [59, 60, 61] In those disclosures he makes several inaccurate or misleading statements which reflect adversely on the safety of Dreamland's products.

The statement and posts necessarily identify Dreamland and its products. Commissioner Trumka's written statement cites to the *Washington Post* article by Consumer Reports that Comr. Trumka posted on X in January, *see supra* B.1.[62] That article specifically identifies Dreamland and its products.[63] A reasonable person receiving this information, even one lacking specialized expertise, would readily identify Dreamland from Comr. Trumka's disclosures. Dreamland was not given notice of any adverse statements made about its products before they were made, as the CPSA requires.[64]

As discussed above, it cannot be said that release of this information was "fair" under the circumstances.[65]

Comr. Trumka's statement continues to make similar misleading and inaccurate disclosures as discussed above. For example, the statement misleadingly suggests that CPSC "matches" NIH's statement that "weighted products 'can pose dangers for babies[.]'"[66] But as discussed above, the Commission has made no such determination. His statement also misleadingly suggests that CPSC has adopted CDC's view that the products "are not safe for infants."[67]

Commissioner Trumka also made the damaging assertion that "[t]here are multiple infant deaths in these products."[68] This statement is misleading because it implies that these products caused

---

[59] Comm'r Trumka, *Beware: Weighted Infant Swaddles and Blankets Are Unsafe for Sleep; Retailers Should Consider Stopping Sales* (Apr. 15, 2024), https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/Beware-Weighted-Infant-Swaddles-and-Blankets-Are-Unsafe-for-Sleep-Retailers-Should-Consider-Stopping-Sales (statements attached as Attachments 3 and 4).

[60] @TrumkaCPSC, X.com (Apr. 15, 2024 at 3:16 PM), https://x.com/TrumkaCPSC/status/1779951952559751190 (post attached as Attachment 5).

[61] @trumkacpsc, Instagram.com (Apr. 15, 2024), https://www.instagram.com/trumkacpsc/reel/C5y1uX_RNso/(post attached as Attachment 6).

[62] *See* Attachment 4 at 1.

[63] Lauren Kirchner, Consumer Reports, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST (Jan. 22, 2024 at 2:00 p.m. EST), https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe.

[64] 15 U.S.C. § 2055(b)(1); 16 C.F.R. § 1101.13.

[65] 15 U.S.C. § 2055(b)(1); 16 C.F.R. § 1101.33.

[66] Attachment 4 at 1.

[67] *Id.*

[68] *Id.*

infant deaths, when, as Comr. Trumka is aware, CPSC's own data does not establish such causation.[69] He also quotes statements from the American Academy of Pediatrics ("AAP") suggesting that the products lead to SIDS or brain damage. Again, this misleadingly suggests that CPSC has considered this information when, as far as is publicly known, it has not. And while AAP is a leading professional association for pediatricians, that it or one of its members makes an unfounded claim about a product or a class of products does not meet CPSC's statutorily prescribed standard for ensuring accuracy, which requires CPSC to make specific efforts and determinations to corroborate the information.[70]

Finally, Commissioner Trumka references the Rock 'n Play—a recalled product. This reference means to incite fear and solicit attention to his cause. It misleadingly suggests that there are, or may be, significantly higher numbers of incidents related to weighted infant sleep products than CPSC's data show. Also missing from this reference is a clarification that the Rock 'n Play was recalled subject to the Commission's regulations and the law. Neither CPSC nor Comr. Trumka appears to have followed the CPSA or CPSC's regulations in issuing the statements Dreamland has identified.

Commissioner Trumka released an accompanying video statement on his official X and Instagram accounts. In his posts Comr. Trumka says: "Do NOT—I repeat—do NOT put any weighted swaddles or blankets on your baby. Companies will try to fool you into thinking they're safe, but there's a reason @USCPSC, @CDC, & @NIH have warned you NOT to use them. It's a risk of death to your baby. Read our full statement using the link in bio."[71] In the videos, Comr. Trumka says:

> It seems like a new baby product comes on the market every day. Some new ones that you need to watch out for are weighted infant swaddles and blankets. Weighted blankets for adults are one thing, but they have no place in infant sleep. The Consumer Product Safety Commission just updated our safe sleep guidance to warn you NOT to use these products with your babies. This brings us in line with NIH and CDC which warns that weighted products are unsafe for infants. And when unsafe comes up in the infant sleep space, let's be clear we're talking about the risk of death. You can find our safe sleep guidance at cpsc.gov/safesleep. It has great information on what to do and what not to do.[72]

The video includes an image of a swaddled infant with two hand weights crisscrossed over the child's chest and superimposed with a general prohibition sign over the image. In small, barely legible writing, the image states: "Weights and baby not shown to scale. For illustrative purposes only."[73]

As described above, these X and Instagram posts, as well as the accompanying video, repeat the same, or very similar, inaccurate and misleading statements regarding CPSC's determination about

---

[69] *See, e.g.,* Letter from Khalisa Phillips, CPSC, to Michelle Barry & Tara Williams, Subcommittee Co-Chairs for ASTM F15.19 (July 1, 2024), https://www.cpsc.gov/content/Infant-Blanket-Spring-2024-ASTM-Cover-Letter-and-Spreadsheet?language=th.

[70] 16 C.F.R. § 1101.32.

[71] There is a slight discrepancy in the formatting of the posts, but the content published on X and Instagram is substantially the same.

[72] @TrumkaCPSC, X.com (Apr. 15, 2024 at 3:16 PM), https://x.com/TrumkaCPSC/status/1779951925259751190 (emphases in original).

[73] The included screenshots were taken on a computer and blown up to make the text legible. The text would likely be illegible to most individuals viewing the posts on a smart phone or other device.

the safety of these products and that they pose a risk of death. The posts again adopt the regulatorily deficient statements of third parties, even though there is no suggestion that the Commission has reviewed or corroborated those statements.

The video also makes several new misleading or inaccurate statements. First, Commissioner Trumka's statement suggests that these products are "new" when they are not. The purported newness of the product misleadingly suggests that there is something unknown about the product. However, weighted infant sleep products are not new and some have been on the market for over 10 years. During that time over 3.5 million weighted sleepwear products have been sold.[74] Indeed, a recent CPSC adjudication suggests that "experiential data" may provide crucial evidence when evaluating the risk of injury from a product.[75] But those facts are not presented alongside his statement. The posts also misleadingly and inaccurately suggest that companies that make these products, like Dreamland, are trying to "fool" consumers. But he has no basis for making that statement.

In fact, the image of the infant he includes in his video is what tries to "fool" consumers. It misrepresents the design, weight, and downward pressure provided by weighted infant sleep products like Dreamland's. Commissioner Trumka, or staff, seemingly realized the problem that their vividly misleading image created and attempted to place a disclaimer on it. However, the disclaimer is barely legible on a computer or even when made larger in the attached screenshots. Given the nature of social media, particularly X and Instagram, which are often viewed on smartphones, the disclaimer was likely illegible to most viewers. Even then, the disclaimer does little to dissuade viewers from what their eyes see in the post's utterly misleading image.

### 3. April 26, 2024 Statement and Statement Video on X and Instagram

On April 26, 2024, Commissioner Trumka posted a statement on the CPSC website, an accompanying statement on CPSC letterhead, and a video statement on his official X and Instagram accounts.[76, 77, 78] In those statements, he disclosed—for the first time—that he had sent letters to Dreamland's retailers including Target, Walmart, Nordstrom, and Babylist.[79] On information and belief, Comr. Trumka sent similar letters to Dreamland's other retailers.[80] For example, public records

---

[74] Joe Hernandez, *Amazon, Target and other retailers pull weighted infant sleepwear over safety fears*, NPR (updated May 7, 2024 2:07 PM ET), https://www.npr.org/2024/05/02/1248194639/weighted-infant-sleepwear-amazon-target-safety.

[75] *In the Matter of Leachco*, CPSC Docket No. 22-1, Slip op. at 59 (July 3, 2024).

[76] Comm'r Trumka, *Target, Walmart, Nordstrom, and Babylist Commit to Stop Selling Weighted Infant Products* (Apr. 26, 2024), https://www.cpsc.gov/About-CPSC/Commissioner/Richard-Trumka/Statement/Target-Walmart-Nordstrom-and-Babylist-Commit-to-Stop-Selling-Weighted-Infant-Products (statements attached as Attachments 7 and 8).

[77] @TrumkaCPSC, X.com (Apr. 26, 2024 at 10:26 AM), https://x.com/TrumkaCPSC/status/1783865218226852073 (post attached as Attachment 9).

[78] @trumkacpsc, Instagram.com (Apr. 26, 2024) (post attached as Attachment 10), https://www.instagram.com/reel/C6Ol9phuVEa/?utm_source=ig_web_copy_link.

[79] Letters from Commissioner Trumka to Target, Walmart, Nordstrom, and Babylist (dated Apr. 15, 2024), https://www.cpsc.gov/s3fs-public/Trumka_Statement_Weighted_Infant_Products_4_26_24_with_attachments.pdf?VersionId=iK5EDmatuGu9_z2jKt8t8BaWndFKwWCh.

[80] In his accompanying video statement Commissioner Trumka stated that "I have letters out to other retailers as well; I haven't heard back from them quite yet." *See supra* nn.77, 78.

indicate that Comr. Trumka's staff met with representatives from Mercari to discuss his letter to the company regarding weighted infant sleep products.[81]

While Commissioner Trumka disclosed that he had communications with these, and other retailers, he did not provide the contents of other communications he, or his staff, may have had with retailers. Curiously, he notes that Amazon was also taking steps to remove infant weighted sleep products, but never mentions if he sent a letter to (or otherwise had contact with) them.

The letters issued to these, and other retailers, necessarily identify Dreamland and its products. Each publicly available letter includes a hyperlink to a product search for weighted infant sleep products[82] Because Dreamland's products, including weighted swaddles, were for sale on those websites at the time the letters were sent, a reasonable person receiving that information could identify Dreamland as the manufacturer.[83] The letters to retailers also cite to the *Washington Post* article by Consumer Reports that Commissioner Trumka posted on X in January, *see supra* B.1. That article specifically identifies Dreamland and its products.[84] A reasonable person receiving this information, even one lacking specialized expertise, can readily identify Dreamland from Comr. Trumka's disclosures. Dreamland was not given notice of any adverse statements made about its products before they were made, as the CPSA requires.[85]

Commissioner Trumka released an accompanying video statement on his official X and Instagram accounts. In his posts Comr. Trumka stays that: "After receiving my letters, @Target, @Nordstrom, @Walmart and @Babylist have agreed to discontinue the sale of weighted infant sleep sacks to keep babies safe! 👏 This action could save lives, and I'm grateful for their cooperation."[86] In the videos posted Comr. Trumka says:

> I have some great news to report. Last week, I wrote to major U.S. retailers and I wanted to talk to them about a product category that I'm concerned about: Weighted infant blankets and swaddles. I wanted to let them know that CPSC, CDC, NIH, and the American Academy of Pediatrics have all warned against their use and that multiple deaths have occurred in these products. Armed with this information, multiple major

---

[81]    CPSC, Log of Meeting (Apr. 30, 2024), https://www.cpsc.gov/s3fs-public/Telephone%20CallwithMercariMeetingLog.pdf?VersionId=8UB4pmcti05HGsQikZd2WhlE3agW_1zh ("Subject: Telephone Call with Mercari").

[82]    The letter to Target provides a hyperlink to an April 12, 2024 product search using the phrase "Weighted Sleep Sacks for Babies." *See* Attachment 8 at 3 (Letter to Brian Cornell, n. 1). The letter to Walmart provides a hyperlink to an April 15, 2024 product search using the phrase "Weighted Sleep Sacks for Babies." *See* Attachment 8 at 5 (Letter to Doug McMillon, n. 1). The letter to Nordstrom provides a hyperlink to an April 15, 2024 product search using the phrase "Weighted infant sleep sack." *See* Attachment 8 at 7 (Letter to Erik B. Nordstrom, n. 1). The letter to Babylist provides a hyperlink to an April 15, 2024 product search using the phrase "Weighted sleep." *See* Attachment 8 at 9 (Letter to Natalie Gordon, n. 1).

[83]    16 C.F.R. § 1101.13.

[84]    Lauren Kirchner, Consumer Reports, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST (Jan. 22, 2024 at 2:00 p.m. EST), https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe.

[85]    15 U.S.C. § 2055(b)(1); 16 C.F.R. § 1101.13.

[86]    There is a slight discrepancy in the formatting of the posts, and how they push the user to his full statement. However, the content published on X and Instagram is substantially the same.

U.S. retailers decided to stop selling these products out of an abundance of caution and a mind toward safety. And I wanted to take time to commend those companies. Target, Walmart, Nordstrom, Amazon, and Babylist all made the decision to pull sales of these products. I have letters out to other retailers as well; I haven't heard back from them quite yet. I'm gonna report to you when I do. Stay safe.

Commissioner Trumka's April 26 statement applauding his unlawful actions, and the attached April 15 letters to retailers, repeat the same misleading and inaccurate statements included in his April 15 statement. He again suggests that weighted infant sleep products pose risks to babies, misleadingly recounts CPSC's purported position regarding the safety of such products, and highlights third-party statements suggesting that such products increase the risk of SIDS and harm infants' brain development. For the same reasons discussed above, these statements and letters require retraction.

### 4. Miscellaneous Meetings and Communications

Commissioner Trumka and his staff appear to have had meetings with several organizations that have also made statements against the use of weighted infant sleep products. The summaries of those meetings prepared by the Commissioner's staff are consistently listed as only "Regular check-in re general work updates" so it is unclear if weighted sleep products were discussed.[87] However, given other indications, it is possible that they were. For example, Consumer Reports, Inc. reported that it was lobbying CPSC about issues related to infant product safety.[88] During that time, public records indicated that Comr. Trumka or his staff met with that organization three times. The publicly available call logs do not indicate if there were other communications, like emails, between the organization and Comr. Trumka or his staff. But as discussed above, Comr. Trumka posted an article on X, written by Consumer Reports, that names Dreamland and its products, *see supra* B.1.

Dreamland has reason to believe that Commissioner Trumka or his staff may have made the same or substantially similar unlawful statements to others that have not been publicly disclosed. But as the Commission is aware, Section 6(b)'s protections apply to the disclosure of information to "any person" excepting certain government agencies and "[m]embers, employees, agents, representatives and contractors of the Commission, in their official capacity[.]"[89] Thus a violation of the law can be triggered even when the information disclosed is not widely disseminated.

### METHOD OF RETRACTION REQUESTED

Given the myriad statutory, regulatory, and procedural failings catalogued here, the statements identified above should be retracted in full. The Commission, and Commissioner Trumka, should identify any individual or entity that received such communications, regardless of the method by which they were received, and provide a statement retracting the same. The retractions should be public and equivalent to the method by which the statements were initially made. For example, regarding Comr. Trumka's statements to retailers, he or his staff appear to have contacted and communicated with

---

[87] Attached as Attachment 11 is a list of Commissioner Trumka's publicly disclosed meetings and telephone calls since his amendment was rejected. On information and belief, this list may not be complete, as many of the telephone logs appear to have been published after Dreamland's May 9 litigation hold letter.

[88] Q1 Lobbying Report for Consumer Reports, Inc. (undated), https://disclosurespreview.house.gov/ld/ldxmlrelease/2024/Q1/301575422.xml.

[89] 16 C.F.R. § 1101.12.

multiple retailers. He then, to Dreamland's knowledge, publicly discussed the same through statements posted on CPSC's website and video posts on X and Instagram. Any retraction should require removal of the offending statements and posts, a statement regarding the retraction, and equivalent social media messaging. For example, Mr. Trumka's offending April 26 X post has been "pinned" to the top of his account for months, so any retraction should require equivalently long "pinning" treatment.

To the extent any of the identified statements were sent to staff or personnel at other government agencies (federal or state), Members of Congress or their staffs, media lists or media contacts, those individuals, legislators, agencies, or organizations should likewise be provided with the retractions with at least the same type of process. For example, if the information was sent during normal business hours or was flagged as "important," then the retractions should receive the same treatment.

## CONCLUSION

Given the substantial reputational, legal, and financial harms that have occurred because of the inaccurate and misleading public disclosures identified in this letter, Dreamland Baby respectfully requests the Commission to act expeditiously, within 30 working days, and to respond to this request for retraction by September 4, 2024.[90]

Thank you for your prompt and careful attention to this matter.

Very truly yours,

*Kara Rollins*

KARA MCKENNA ROLLINS
Litigation Counsel
JENIN YOUNES
Litigation Counsel
NEW CIVIL LIBERTIES ALLIANCE
1225 19th Street NW, Suite 450
Washington, DC 20036
Direct: (202) 869-5210
kara.rollins@NCLA.legal
jenin.younes@NCLA.legal

*Counsel for Dreamland Baby Co.*

---

[90] 16 C.F.R. § 1101.52(d). Section 1101.52(d)'s "good cause" exception should not apply as "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal quotations and citations omitted).

# Attachment 1



United States
**CONSUMER PRODUCT**
**SAFETY COMMISSION**

# Safe Sleep – Cribs and Infant Products



# Remember CPSC's "dos and don'ts" for baby sleep spaces

**Many young babies cannot lift their heads to pull away from soft objects that can pose a suffocation risk**, such as bumpers, blankets, pillows, and sleep positioners. Also, a seated or semi-reclined position can cause your baby's head to tip forward and their airway to be blocked.

**Follow these simple tips to make every sleep a safe sleep:**

**DO:**

- **Do** use products intended for sleep including cribs, bassinet, play yard and bedside sleepers that meet federal requirements.
- **Do** remember **"Bare is Best" –** nothing but a fitted sheet in a crib, bassinet or play yard.
- **Do** always place baby on their back.
- **Do** move your baby to their crib, bassinet, or play yard if they fall asleep elsewhere.
- **Do** check our website for recalls ([SaferProducts.gov](#)) and [sign up](#) to receive recall notifications

**DON'T:**

- **Don't** add pillows or blankets to your baby's sleep space.
- **Don't** use weighted blankets or weighted swaddles*.
- **Don't** allow your baby to sleep in an inclined product with an angle greater than 10º such as a rocker, bouncer or glider.
- **Don't** leave your baby unsupervised in products that aren't designed for safe sleeping, such as any inclined product.

*Inclined products, such as rockers, gliders, soothers and swings, should never be used for infant sleep.*

*[NIH.gov](#) and [CDC.gov](#)

# Learn How to Put Your Baby to Sleep Safely

If you just had a baby, are expecting, or are taking care of a young infant, it's important to create a safe sleep environment for your baby. Because babies spend much of their time sleeping, the nursery should be the safest room in the house. Take a few moments to learn about safe sleep.

# Additional Safe Sleep Resources

The National Institute of Child Health and Human Development has a comprehensive Question and Answer page about how you can make sure your child is sleeping safely. Learn more about creating a safe sleep environment for your baby.



For more information, please visit the **Safe to Sleep®** public education campaign led by The Eunice Kennedy Shriver National Institute of Child Health and Human Development (NICHD) of the National Institutes of Health (NIH) and in collaboration with other organizations.

# Safety Tips, Recalls and Warnings

- CPSC Urges Parents/Caregivers to Use Products that Are Safe for Sleep; Check Baby's Sleep Space for Suffocation Hazards; Most Nursery Product-Related Infant Deaths Can Be Prevented
- Fisher-Price Reannounces Recall of 4.7 Million Rock 'n Play Sleepers; At Least Eight Deaths Occurred After Recall
- Kids2 Reannounces Recall of 694,000 Rocking Sleepers; Four Additional Deaths After Recall
- Target Recalls Children's Pillowfort Weighted Blankets Due to Asphyxiation Hazard; Two Fatalities Reported
- CPSC and Baby Trend Warn Consumers About Entrapment Hazard with the Detachable Canopy on Baby Trend Sit N' Stand Strollers; One Death Reported

# Related Recalls







**[Crib Bumpers Recalled Due to Suffocation Hazard; Violation of Federal Crib Bumper Ban; Sold by Henan Ouchang Trading and Xinxiang Junshun Trading on AliExpress and Recalled by AliExpress](#)**

**[UBBCARE Play Yard Mattresses Recalled Due to Suffocation Hazard for Infants; Violation of the Federal Safety Regulation for Crib Mattresses; Sold Exclusively on Amazon.com by UBBCARE](#)**

[Vibe Bear Playyard Mattresses Recalled Due to Suffocation Hazards for Infants; Violation of the Federal Safety Regulation for Crib Mattresses; Sold Exclusively on Amazon.com by Beyond Baby (Recall Alert)](#)

# Safety Education Resources

[Childproofing Your Home - Several Safety Devices to Help Protect Your](#)

[Expecting a Baby?](#)

[Soft Infant & Toddler Carrier Safety Tips](#)

Children

from Home

Hazards

# Posters



**Whether At Home or Traveling, Make Sure Baby Has a Safe Sleep Space** 







## Baby Safety Tips



 es



## Baby Safety Month



7/17/24, 12:55 PM
Safe Sleep – Cribs and Infant Products | CPSC.gov
Case 1:24-cv-03277     Document 1-1     Filed 11/19/24     Page 25 of 62

# Related Multimedia

## VIDEOS



### Keeping Your Baby Safe

Follow these simple tips to make every sleep a safe sleep for your baby.



### Baby Safety - Back to Basics

Babies spend most of their time sleeping, so we're urging parents and caregivers to get "back to basics" to make sure that baby'...



### Baby Safety - Traditional vs Contemporary

The safest way for a baby to sleep is flat on their back without pillows, blankets, or toys in their sleep space.

# Related News

---

July 3, 2024

[CPSC Warns Consumers to Immediately Stop Using Hush Hutting Crib and Play Yard Mattresses Due to Suffocation Risk and Fire Hazard; Violation of the Federal Regulations for Crib Mattresses and Mattress Flammability; Sold at Amazon.com](#)

---

March 14, 2024

[CPSC Warns Consumers to Immediately Stop Using XHJRI Braided Crib Bumpers Due to Suffocation Hazard; Violation of the Federal Ban on Crib Bumpers; Sold Exclusively on Amazon.com by XHJRI-US](#)

---

January 4, 2024

[CPSC Warns Consumers to Immediately Stop Using Hygge Hush Flat Classic Logo Style Play Yard Mattresses Due to Suffocation Risk; Violation of the Federal Safety Regulation for Crib Mattresses](#)

---

# Attachment 2



*Screenshot of @TrumkaCPSC, X.com (Jan. 26, 2024 at 12:00 PM).*

# Attachment 3

7/17/24, 2:09 PM    Beware: Weighted Infant Swaddles and Blankets Are Unsafe for Sleep; Retailers Should Consider Stopping Sales | CPSC.gov

Case 1:24-cv-08277    Document 11-1    Filed 11/19/24    Page 32 of 63



United States
**CONSUMER PRODUCT
SAFETY COMMISSION**

# Beware: Weighted Infant Swaddles and Blankets Are Unsafe for Sleep; Retailers Should Consider Stopping Sales

[Trumka-Statement-on-Weighted-Infant-Blankets-4-15-24.pdf](Trumka-Statement-on-Weighted-Infant-Blankets-4-15-24.pdf) (185.09 KB)

April 15, 2024

CPSC has a clear warning for safe infant sleep: "**Don't** use weighted blankets or weighted swaddles" for your babies. This matches the warnings from the National Institutes of Health (NIH) that weighted products "can pose dangers for babies," and from the Centers for Disease Control and Prevention (CDC) that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."

There are multiple infant deaths in these products. As the co-chair of the American Academy of Pediatrics' (AAP's) task force on Sudden Infant Death Syndrome (SIDS), Dr. Rachel Moon, explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there. It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."

AAP also cites risks to babies' brain development, stating that "there is evidence that the use of weighted sleep products on infants can lead to lower oxygen levels, which . . . may be harmful to the developing infant's brain."

AAP, in calling weighted sleep sacks "not safe for infants," urges quick action to "avoid a repeat of what happened with inclined sleepers," like the Rock N' Play, which "ultimately were associated with over 100 infants' death—all of which would have been prevented if these products were not kept on the consumer market."

So, CPSC, NIH, CDC, and AAP have all warned the public not to use weighted swaddles and blankets. Last fall, I tried to amend CPSC's operating plan to start work on a rule to protect babies from weighted products, but was unable to garner the necessary support at that time.

But we do not have to wait for a federal rule to start protecting babies. Retailers could take precautions today—they have the power to stop sales. In the interest of public safety, I've asked retailers nationwide to reflect on this question: with all the advice out there cautioning against their use, are weighted infant swaddles really what you want to be selling to your consumers? I expect many responsible retailers, armed with this knowledge, will say "no." Stay tuned for those decisions.

Faithfully,

Your consumer advocate at the Consumer Product Safety Commission

**Commissioner Richard L. Trumka Jr.**

See Commissioner Trumka's [statement video](#) on X (formerly Twitter):

Do NOT—I repeat—do NOT put any weighted swaddles or blankets on your baby.

Companies will try to fool you into thinking they're safe, but there's a reason [@USCPSC](#), [@CDC](#), & [@NIH](#) have warned you NOT to use them. It's a risk of death to your baby.

7/17/24, 2:09 PM
Beware Weighted Infant Swaddles and Blankets Are Unsafe for Sleep, Retailers Should Consider Stopping Sales | CPSC.gov
Case 1:24-cv-08277 Document 1-1 Filed 11/19/24 Page 34 of 62

More: https://t.co/iZIUVuXwSO pic.twitter.com/BaPFvXrSQg

— Commissioner Rich Trumka Jr. (@TrumkaCPSC) April 15, 2024

Statement

Richard Trumka

# Attachment 4



UNITED STATES
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**STATEMENT OF
COMMISSIONER RICH TRUMKA JR.**

**April 15, 2024**

**BEWARE: WEIGHTED INFANT SWADDLES AND BLANKETS ARE
UNSAFE FOR SLEEP;
RETAILERS SHOULD CONSIDER STOPPING SALES**

CPSC has a clear warning for safe infant sleep: "**Don't** use weighted blankets or weighted swaddles" for your babies.[1]  This matches the warnings from the National Institutes of Health (NIH) that weighted products "can pose dangers for babies," and from the Centers for Disease Control and Prevention (CDC) that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."[2]

There are multiple infant deaths in these products.  As the co-chair of the American Academy of Pediatrics' (AAP's) task force on Sudden Infant Death Syndrome (SIDS), Dr. Rachel Moon, explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there.  It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."[3]

AAP also cites risks to babies' brain development, stating that "there is evidence that the use of weighted sleep products on infants can lead to lower oxygen levels, which . . . may be harmful to the developing infant's brain."[4]

---

[1] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

[2] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[3] Lauren Kirchner, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST, Jan. 22, 2024 https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/.

[4] *Id.*

AAP, in calling weighted sleep sacks "not safe for infants," urges quick action to "avoid a repeat of what happened with inclined sleepers," like the Rock N' Play, which "ultimately were associated with over 100 infants' death—all of which would have been prevented if these products were not kept on the consumer market."[5]

So, CPSC, NIH, CDC, and AAP have all warned the public not to use weighted swaddles and blankets. Last fall, I tried to amend CPSC's operating plan to start work on a rule to protect babies from weighted products, but was unable to garner the necessary support at that time.[6]

But we do not have to wait *for a federal rule* to start protecting babies. Retailers could take precautions today—they have the power to stop sales. In the interest of public safety, I've asked retailers nationwide to reflect on this question: with all the advice out there cautioning against their use, are weighted infant swaddles really what you want to be selling to your consumers? I expect many responsible retailers, armed with this knowledge, will say "no." Stay tuned for those decisions.


Faithfully,

Your consumer advocate at the Consumer Product Safety Commission

**Commissioner Richard L. Trumka Jr.**

---

[5] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[6] CPSC, *Commission Meeting FY24 Operating Plan Decisional*, YouTube (Nov. 9, 2023), https://youtu.be/LHemQpZZBN0?t=1047.

# Attachment 5



**Commissioner Rich Trumka Jr.**
@TrumkaCPSC

Do NOT—I repeat—do NOT put any weighted swaddles or blankets on your baby.

Companies will try to fool you into thinking they're safe, but there's a reason @USCPSC, @CDC, & @NIH have warned you NOT to use them. It's a risk of death to your baby.

More: bit.ly/49IfRdo

3:16 PM · Apr 15, 2024 · **1,031** Views

*Screenshot of @TrumkaCPSC, X.com (Apr. 15, 2024 at 3:16 PM).*

# Attachment 6



*Screenshot of @TrumkaCPSC, Instagram.com (Apr. 15, 2024)*

# Attachment 7



United States
**CONSUMER PRODUCT
SAFETY COMMISSION**

# Target, Walmart, Nordstrom, and Babylist Commit to Stop Selling Weighted Infant Products

Trumka_Statement_Weighted_Infant_Products_4_26_24_with_attachments.pdf (269.9 KB)

April 26, 2024

On April 15, 2024, I wrote to major U.S. retailers informing them of the hazards weighted infant swaddles and blankets pose to babies, and asking them to consider whether they want to continue selling such products.[1] I am pleased to announce that Target, Walmart, Nordstrom, and Babylist quickly responded by sharing that they will cease sales of weighted infant products in the interest of safety.[2]   Each of those companies deserves praise for prioritizing safety over profits.

In my letters to retailers, I alerted them to the fact that multiple infant deaths have occurred in weighted infant products.  Three federal public health agencies[3] and the American Academy of Pediatrics (AAP),[4] have issued warnings recommending against the use of weighted infant blankets and wearables.  CPSC warns: **"Don't** use weighted blankets or weighted swaddles" for your babies.  [5]   The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies."  And the Centers for Disease Control and Prevention (CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants." [6] In June 2023, AAP also discussed the risk of brain damage posed by weighted infant sleep products:

These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weighted sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain.[7]

I've sat with the parents of a child who died in one of these products, and I carry their grief with me.  I share their desire to make sure that no one else suffers the fate that their family did.

Target, Walmart, Nordstrom, and Babylist are acting as responsible stewards of public safety.  They are focusing on their customers' best interests.  Their actions show tremendous promise for the safety of the infant sleep space.  I have observed other major companies like Amazon begin to follow their example, sending out notices to consumers that they will no longer be allowing sellers to list these types of products on their platforms.[8]   I expect to hear back from additional retailers soon.

Faithfully,

Your consumer advocate at the Consumer Product Safety Commission

**Commissioner Richard L. Trumka Jr.**


[1] Letters from Commissioner Richard L. Trumka to weighted infant product retailers (April 15, 2024) (attached).

[2] Letter from Walmart to the Office of Commissioner Trumka (April 17, 2024); Email from Target to the Office of Commissioner Trumka (April 25, 2024); Email from Nordstrom to the Office of Commissioner Trumka (April 25, 2023); Email from Babylist to the Office of Commissioner Trumka (April 25, 2024).

[3] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[4] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[5] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

[6] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[7] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[8] "Weighted Infant Sleep Products," Amazon Seller Central (last accessed Apr. 25, 2024) (available at: https://sellercentral.amazon.com/help/hub/reference/external/GKDFVJSUHPYTRHW3).

Statement

Richard Trumka

# Attachment 8



UNITED STATES
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**STATEMENT OF COMMISSIONER RICH TRUMKA JR.**

## TARGET, WALMART, NORDSTROM, AND BABYLIST COMMIT TO STOP SELLING WEIGHTED INFANT PRODUCTS

### April 26, 2024

On April 15, 2024, I wrote to major U.S. retailers informing them of the hazards weighted infant swaddles and blankets pose to babies, and asking them to consider whether they want to continue selling such products.[1]  I am pleased to announce that Target, Walmart, Nordstrom, and Babylist quickly responded by sharing that they will cease sales of weighted infant products in the interest of safety.[2]  Each of those companies deserves praise for prioritizing safety over profits.

In my letters to retailers, I alerted them to the fact that multiple infant deaths have occurred in weighted infant products.  Three federal public health agencies[3] and the American Academy of Pediatrics (AAP),[4] have issued warnings recommending against the use of weighted infant blankets and wearables.  CPSC warns: "**Don't** use weighted blankets or weighted swaddles" for your babies.[5]  The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies."  And the Centers for Disease Control and Prevention

---

[1] Letters from Commissioner Richard L. Trumka to weighted infant product retailers (April 15, 2024) (attached).

[2] Letter from Walmart to the Office of Commissioner Trumka (April 17, 2024); Email from Target to the Office of Commissioner Trumka (April 25, 2024); Email from Nordstrom to the Office of Commissioner Trumka (April 25, 2023); Email from Babylist to the Office of Commissioner Trumka (April 25, 2024).

[3] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[4] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[5] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

(CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants." [6]  In June 2023, AAP also discussed the risk of brain damage posed by weighted infant sleep products:

> These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weighted sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain.[7]

I've sat with the parents of a child who died in one of these products, and I carry their grief with me.  I share their desire to make sure that no one else suffers the fate that their family did.

Target, Walmart, Nordstrom, and Babylist are acting as responsible stewards of public safety.  They are focusing on their customers' best interests.  Their actions show tremendous promise for the safety of the infant sleep space.  I have observed other major companies like Amazon begin to follow their example, sending out notices to consumers that they will no longer be allowing sellers to list these types of products on their platforms.[8]  I expect to hear back from additional retailers soon.


Faithfully,

Your consumer advocate at the Consumer Product Safety Commission

**Commissioner Richard L. Trumka Jr.**

---

[6] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[7] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[8] "Weighted Infant Sleep Products," Amazon Seller Central (last accessed Apr. 25, 2024) (available at: https://sellercentral.amazon.com/help/hub/reference/external/GKDFVJSUHPYTRHW3).



UNITED STATES
## CONSUMER PRODUCT SAFETY COMMISSION
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

### COMMISSIONER RICH TRUMKA JR.

**April 15, 2024**

**BY EMAIL AND CERTIFIED MAIL**
Mr. Brian Cornell
Chair and CEO
Target Corporation
1000 Nicollet Mall
Minneapolis, MN  55403

Dear Mr. Cornell,

I write to inform you of a consensus among public health agencies, pediatricians, and Safe Sleep proponents: that weighted infant products, like sleep sacks, swaddles, and blankets are not safe for infant sleep.  I am aware of **multiple infant deaths** involving weighted infant sleep sacks.  Currently, Target has listed for sale on its website a number of weighted infant sleep products.[1]

Three federal public health agencies[2] and the American Academy of Pediatrics (AAP),[3] an organization representing 67,000 pediatricians, have issued warnings recommending against the use of weighted infant blankets and wearables.  CPSC warns: "**Don't** use weighted blankets

---

[1] "Weighted Sleep Sacks for Babies" product search, *Target* (last accessed Apr. 12, 2024) (available at: https://www.target.com/s?searchTerm=weighted+sleep+sacks+for+babies&category=0%7CAll%7Cmatchallpartial%7Call+categ ories&tref=typeahead%7Cterm%7C0%7Cweighted+sleep+sacks+for+babies%7Cweighted+sleep+sacks+for+babies%7C%7C% 7Cservice%7C%7C%7C%7C%7Cnormalisation%7Ecategory_v3&searchTermRaw=weighted+sleep+sack).

[2] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[3] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

or weighted swaddles" for your babies.[4]  The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies."  And the Centers for Disease Control and Prevention (CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."[5]

Dr. Rachel Moon, of the University of Virginia, the nation's leading expert on safe infant sleep, and co-chair of AAP's task force on Sudden Infant Death Syndrome (SIDS) explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there.  It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."[6]

In June 2023, AAP also explained the risk of brain damage posed by weighted infant sleep products:

These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain.[7]

Considering these serious safety concerns, I would like to speak with a representative of your company to discuss a simple question: does Target really want to continue selling these products to its consumers?  Your consumers place a great deal of trust in your hands.

Please contact my Executive Assistant, Isabella Maxey, IMaxey@cpsc.gov so that we can schedule a telephone call at your earliest convenience.  I look forward to speaking soon.

Sincerely,

Richard L. Trumka Jr.
Commissioner
U.S. Consumer Product Safety Commission

---

[4] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

[5] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[6] Lauren Kirchner, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST, Jan. 22, 2024 https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/.

[7] *Id.*



UNITED STATES
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**COMMISSIONER RICH TRUMKA JR.**

**April 15, 2024**

**BY EMAIL AND CERTIFIED MAIL**
Mr. Doug McMillon
President and CEO
Walmart Inc.
702 SW 8th Street
Bentonville, AR 72716

Dear Mr. McMillon,

I write to inform you of a consensus among public health agencies, pediatricians, and Safe Sleep proponents: that weighted infant products, like sleep sacks, swaddles, and blankets are not safe for infant sleep.  I am aware of **multiple infant deaths** involving weighted infant sleep sacks.  Currently, Walmart has listed for sale on its website a number of weighted infant sleep products.[1]

Three federal public health agencies[2] and the American Academy of Pediatrics (AAP),[3] an organization representing 67,000 pediatricians, have issued warnings recommending against the use of weighted infant blankets and wearables.  CPSC warns: "**Don't** use weighted blankets or weighted swaddles" for your babies.[4]  The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies."  And the Centers for Disease Control and

---

[1] "Weighted Sleep Sacks for Babies" product search, *Walmart.com* (last accessed Apr. 15, 2024), https://www.walmart.com/search?q=weighted+sleep+sacks+for+babies.

[2] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[3] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[4] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

1

Prevention (CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants."[5]

Dr. Rachel Moon, of the University of Virginia, the nation's leading expert on safe infant sleep, and co-chair of AAP's task force on Sudden Infant Death Syndrome (SIDS) explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there.  It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there."[6]

In June 2023, AAP also explained the risk of brain damage posed by weighted infant sleep products:

These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain.[7]

Considering these serious safety concerns, I would like to speak with a representative of your company to discuss a simple question: does Walmart really want to continue selling these products to its consumers?  Your consumers place a great deal of trust in your hands.

Please contact my Executive Assistant, Isabella Maxey, IMaxey@cpsc.gov so that we can schedule a telephone call at your earliest convenience.  I look forward to speaking soon.

Sincerely,

Richard L. Trumka Jr.
Commissioner
U.S. Consumer Product Safety Commission

---

[5] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[6] Lauren Kirchner, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST, Jan. 22, 2024 https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/.

[7] *Id.*



UNITED STATES
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**COMMISSIONER RICH TRUMKA JR.**

**April 15, 2024**

**BY EMAIL AND CERTIFIED MAIL**
Mr. Erik B. Nordstrom
Chief Executive Officer
Nordstrom
1617 6th Avenue
Seattle, WA 98101

Dear Mr. Nordstrom,

I write to inform you of a consensus among public health agencies, pediatricians, and Safe Sleep proponents: that weighted infant products, like sleep sacks, swaddles, and blankets are not safe for infant sleep. I am aware of **multiple infant deaths** involving weighted infant sleep sacks. Currently, Nordstrom has listed for sale on its website a number of weighted infant sleep products.[1]

Three federal public health agencies[2] and the American Academy of Pediatrics (AAP),[3] an organization representing 67,000 pediatricians, have issued warnings recommending against the use of weighted infant blankets and wearables. CPSC warns: "**Don't** use weighted blankets or weighted swaddles" for your babies.[4] The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies." And the Centers for Disease Control and

---

[1] "Weighted infant sleep sack" product search, *Nordstrom.com* (last accessed Apr. 15, 2024), https://www.nordstrom.com/sr?origin=keywordsearch&keyword=weighted+infant+sleep+sack.

[2] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[3] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[4] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

Prevention (CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants." [5]

Dr. Rachel Moon, of the University of Virginia, the nation's leading expert on safe infant sleep, and co-chair of AAP's task force on Sudden Infant Death Syndrome (SIDS) explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there. It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there." [6]

In June 2023, AAP also explained the risk of brain damage posed by weighted infant sleep products:

These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain. [7]

Considering these serious safety concerns, I would like to speak with a representative of your company to discuss a simple question: does Nordstrom really want to continue selling these products to its consumers? Your consumers place a great deal of trust in your hands.

Please contact my Executive Assistant, Isabella Maxey, IMaxey@cpsc.gov so that we can schedule a telephone call at your earliest convenience. I look forward to speaking soon.

Sincerely,

Richard L. Trumka Jr.
Commissioner
U.S. Consumer Product Safety Commission

---

[5] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[6] Lauren Kirchner, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST, Jan. 22, 2024 https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/.

[7] *Id.*



UNITED STATES
**CONSUMER PRODUCT SAFETY COMMISSION**
4330 EAST WEST HIGHWAY
BETHESDA, MD 20814

**COMMISSIONER RICH TRUMKA JR.**

**April 15, 2024**

**BY EMAIL AND CERTIFIED MAIL**
Ms. Natalie Gordon
Founder and CEO
Babylist
1900 Powell Street, Suite 150
Emeryville, CA 94608

Dear Ms. Gordon,

I write to inform you of a consensus among public health agencies, pediatricians, and Safe Sleep proponents: that weighted infant products, like sleep sacks, swaddles, and blankets are not safe for infant sleep.  I am aware of **multiple infant deaths** involving weighted infant sleep sacks.  Currently, Babylist has listed for sale on its website a number of weighted infant sleep products.[1]

Three federal public health agencies[2] and the American Academy of Pediatrics (AAP),[3] an organization representing 67,000 pediatricians, have issued warnings recommending against the use of weighted infant blankets and wearables.  CPSC warns: "**Don't** use weighted blankets or weighted swaddles" for your babies.[4]  The National Institutes of Health (NIH) says that these weighted products "can pose dangers for babies."  And the Centers for Disease Control and

---

[1] "Weighted sleep" product search, *Babylist.com* (last accessed Apr. 15, 2024), https://www.babylist.com/store/search?search_term=weighted%20sleep.

[2] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 22, 2024) (available at: https://www.cpsc.gov/SafeSleep); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 22, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/); "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 22, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment).

[3] Letter from Sandy L. Chung, MD and President of AAP to CPSC and ASTM International F15 Committee Chair Donald Mays (June 15, 2023) (available at: https://www.documentcloud.org/documents/23849624-aap-letter-61523).

[4] "Safe Sleep – Cribs and Infant Products," *CPSC* (last accessed Jan. 18, 2024) (available at: https://www.cpsc.gov/SafeSleep#:%7E:text=Don%27t%20use%20weighted%20blankets,such%20as%20any%20inclined%20product).

1

Prevention (CDC) states that "[w]eighted products such as weighted sleepers, weighted swaddles, weighted sleep sacks, and weighted blankets are not safe for infants." [5]

Dr. Rachel Moon, of the University of Virginia, the nation's leading expert on safe infant sleep, and co-chair of AAP's task force on Sudden Infant Death Syndrome (SIDS) explained to the Washington Post: "When babies are first born, their rib cage is not rigid, and so it doesn't take a lot of pressure to press on it and create obstruction there. It makes it harder for them to breathe, it makes it harder for their heart to beat properly if there's pressure on there." [6]

In June 2023, AAP also explained the risk of brain damage posed by weighted infant sleep products:

These products are associated with concerning reductions in oxygen saturation levels in infants. This means there is evidence that the use of weight sleep products on infants can lead to lower oxygen levels, which if sustained, may be harmful to the developing infant's brain. [7]

Considering these serious safety concerns, I would like to speak with a representative of your company to discuss a simple question: does Babylist really want to continue selling these products to its consumers? Your consumers place a great deal of trust in your hands.

Please contact my Executive Assistant, Isabella Maxey, IMaxey@cpsc.gov so that we can schedule a telephone call at your earliest convenience. I look forward to speaking soon.

Sincerely,

Richard L. Trumka Jr.
Commissioner
U.S. Consumer Product Safety Commission

---

[5] "Safe Sleep Environment for Baby," *NIH* (last accessed Jan. 18, 2024) (available at: https://safetosleep.nichd.nih.gov/reduce-risk/safe-sleep-environment); "Helping Babies Sleep Safely," *CDC* (last accessed Jan. 18, 2024) (available at: https://www.cdc.gov/reproductivehealth/features/baby-safe-sleep/).

[6] Lauren Kirchner, *Weighted blankets are dangerous for babies, doctors warn*, WASH. POST, Jan. 22, 2024 https://www.washingtonpost.com/wellness/2024/01/22/weighted-baby-blankets-unsafe/.

[7] *Id.*

# Attachment 9



*Screenshot of @TrumkaCPSC, X.com (Apr. 26, 2024 at 10:26 AM).*



*Screenshot of @TrumkaCPSC, X.com (Apr. 26, 2024 at 10:26 AM) (pinned tweet).*

# Attachment 10



*Screenshot of @TrumkaCPSC, Instagram.com (Apr. 26, 2024).*

# Attachment 11

| Date of Meeting | Time of Meeting | Date Meeting Disclosed | Title | Summary of Meeting | Link |
|---|---|---|---|---|---|
| 11/13/2023 | | | "Telephone Call with [Consumer] Federation of America" | "Regular check-in on general work updates." | |
| 11/13/2023 | | | "Telephone Call with Consumer Reports" | "Regular check-in on general work updates." | |
| 11/13/2023 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 11/16/2023 | | | "Telephone Call with Consumer Reports" | "Regular check-in on general work updates." | |
| 11/28/2023 | 2:00 PM to 2:30 PM (America/New_York) | "Transmitted to the Office of the Secretary and posted on the Public Calendar 11/28/2023." | "Meeting with Marry Thomas-Romero" | "Discussion of Ms. Thomas-Romero's experience participating in the voluntary standard for weighted infant products. Ms. Thomas-Romero requested the meeting." | |
| 11/29/2023 | | | "Telephone Call with [Consumer] Federation of America" | "Regular check-in on general work updates." | |
| 12/11/2023 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 12/15/2023 | | | "Telephone Call with Consumer Reports" | "Regular check-in on general work updates." | |
| 1/8/2024 | | | "Telephone Call with Consumer Reports" | "Regular check-in on general work updates." | |
| 1/11/2024 | | | "Telephone Call with Consumer Reports" | "Regular check-in on general work updates." | |
| 1/22/2024 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 1/22/2024 | | | "Telephone Call with [Consumer] Federation of America" | "Regular check-in on general work updates." | |
| 2/5/2024 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 2/5/2024 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 4/18/2024 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates." | |
| 4/22/2024 | | | "Phone Call with Target" | "Commissioner Trumka and staff spoke with a representative of Target to discuss the timeline in which Target can officially respond to Commissioner Trumka's letter regarding weighted infant products. The meeting was requested by Amy Oberhelman." | |
| 4/22/2024 | | | "Phone Call with Government Affairs Representative Amy Oberhelman" | "Commissioner Trumka and staff spoke with a representative of Target to discuss the timeline in which Target can officially respond to Commissioner Trumka's letter regarding weighted infant products. The meeting was requested by Amy Oberhelman." | |
| 4/23/2024 | | | "Phone Call with Target" | "Follow-up call re Target's response to Commissioner Trumka's Letter re weighted infant sleep products." | |
| 4/25/2024 | | | "Phone Call with Target" | "Follow-up call re Target's response to Commissioner Trumka's Letter re weighted infant sleep products." | |
| 4/26/2024 | | | "Telephone Call with Hush Zeichman" | "Participants discussed voluntary standards activities and updates concerning weighted infant sleep products." | |
| 4/29/2024 | | | "Telephone Call with [Kids in Danger]" | "Regular check-in on general work updates, including [KID Charge Conference]." | |
| 4/29/2024 | | | "Telephone Call with [Consumer] Federation of America" | "Regular check-in on general work updates, including upcoming priorities hearing." | |
| 4/30/2024 | | | "Telephone Call with Meta" | "Participants discussed Commissioner Trumka's letter to Meta re regarding weighted infant sleep products." | |
| 5/2/2024 | | | "Telephone Call with Consumer Reports" | "Introduction to new team member on CORE and regular check-in on general work updates." | |
| 5/9/2024 | | | "Telephone Call with [KID Kids in Danger]" | "Brief discussion regarding voluntary standard for infant wearables." | |
| 5/13/2024 | | | "Telephone Call with [Consumer] Federation of America" | "General reflections from FY25/26 Priorities Hearing." | |
| 5/13/2024 | | | "Telephone Call with [KID Kids in Danger]" | "General reflections from FY25/26 Priorities Hearing." | |