# Exhibit 4



**UNITED STATES**
**CONSUMER PRODUCT SAFETY COMMISSION**

**DIRECTIVES SYSTEM**                              **ORDER NO.**
**1450.2**
**January 16, 2003**
**Reviewed/Current: 4/30/03**

**PUBLIC INFORMATION**
_____

**CLEARANCE PROCEDURES FOR PROVIDING**
**INFORMATION TO THE PUBLIC**

1.    **PURPOSE.**

    **a.**    To describe the clearance procedures to be used when initiating the public disclosure of information that reflects on the safety of consumer products. The procedures apply to any release of information initiated by the Commission, including information disseminated on the agency's web site, regardless of whether the information disclosed would enable the public to ascertain readily the identity of a manufacturer or private labeler. It applies to both oral and written disclosures. These procedures are intended to assure that written and oral information disseminated by the Commission, its staff, agents and representatives is in accord with the law and Commission policy.

    **b.**    To assure that information disclosed to the public is accurate.

2.    **SCOPE.** This Order applies Commission-wide, to all employees, agents and representatives (including contractors), for use when initiating the public disclosure of information (including periodicals, publications, and audiovisuals) that reflects on the safety of consumer products.

3.    **OFFICE RESPONSIBLE FOR THIS DIRECTIVE.** Office of Communications (OCM).

4.    **CANCELLATION.** This cancels Order 1450.2, Clearance Procedures for Providing Information to the Public, dated September 5, 2001. This also cancels Order 1440.2, Controls for Producing Periodicals, Publications, and Audiovisuals (1982).

**5.    AUTHORITY.**

    **a.**    Section 6(b)(6) of the Consumer Product Safety Act (15 U.S.C. 2055(b)(6)).

**6.    REFERENCE.**

    **a.**    Order 0840.1, CPSC Printing Manual.

    **b**.    Title 17 U.S.C. Section 105, Copyright.  United States Government Works

    **c.**    5 CFR § 8101.103, Supplemental Standards of Ethical Conduct for Employees of the Consumer Product Safety Commission.

    **d.**    CPSC Information Quality Guidelines, http://www.cpsc.gov/library/infoguidelines.html

**7.    POLICY.**

    **a.**    **MEANING OF CLEARANCE.**  This directive requires that each Commission disclosure within the scope of this directive receive "clearance."  Clearance means a careful review and written approval of the information to be disclosed by each Assistant or Associate Executive Director (AED) (or delegate) whose area of responsibility is involved in the disclosure in order to eliminate inaccurate or misleading statements.  No information shall be disclosed until approved as set out in this directive.  Specific forms of clearance review are:

        **(1)**    **Technical and Scientific**. Engineering Sciences, Economics, Epidemiology, Health Sciences, Laboratory Sciences.  This clearance means that the statement, consistent with the Commission's Information Quality Guidelines, is supported by:

            **(a)**    data in Commission files or in currently applicable literature;

            **(b)**    articulated technical judgment that is both reduced to writing and based on consideration of all relevant factors; or

            **(c)**    a report prepared by a contractor to the Commission and such report has been subject to a review process by Commission staff.

        **(2)**    **Program.**  Office of Hazard Identification and Reduction (EXHR); Office of Compliance (EXC); Office of Planning and Evaluation (EXPE); and Office of the General Counsel (OGC).  This clearance means that the statement accurately reflects the status of programs and

projects, enforcement activities, litigation, and planning, where appropriate.

**(3)    Editorial.**  Office of Information and Public Affairs (EXPA).  This clearance means that the statement retains style and coherence without changing technical, program, or legal meanings.

**(4)    Policy Decision.**  Office of the Executive Director (EX).  This clearance means that where there may be conflicts among various viewpoints on a statement among the technical and program staffs, the Executive Director will decide among the different viewpoints on the basis of Commission policy.

**(5)    Legal.**  Office of the General Counsel (OGC).  This clearance means that the statement is consistent with applicable laws and regulations, that any possibly inaccurate or misleading statements are eliminated and that any statements of Commission policy are accurate.  Legal review occurs only after all other review is completed.

**b.    CLEARANCE PROCESS.**

**(1)    Routine Clearance.**  The initiating unit is responsible for coordinating clearance procedures for the material which requires clearance.

**(a)**    The initiating unit arranges for review by each Office or Directorate whose area of responsibility is involved with the subject matter of the disclosure, including the OGC. The initiating unit is required to provide a draft for clearance of any official agency document under this Directive to each Commissioner's office.  The Commissioners or their staff will respond promptly with comments to any submitted draft document.

**(b)**    The originator incorporates comments resulting from this preliminary review. Comments not incorporated must be reconciled with the commentor and a revised draft transmitted for final clearance and sign off on Form 120 (See Appendix).  Form 120 may also be found under the MS Word application:  Open MS Word, go to File, select New.  A "New" dialogue box appears, select the CPSC Form Tab.

**(c)** When final technical, policy, and editorial clearances are obtained, the draft must be transmitted to the OGC for final legal review and clearance.

**(d)** The initiating unit will refer problems that may arise to the Executive Director for resolution.

**(e)** The Executive Director will refer special problems to the Commission.

**(f)** Commission documents to be printed through GPO will be referred to EXPA for processing by normal administrative channels and printing and proper financial accounting (see CPSC Order 0840.1).

**(2)** **Emergency Clearance.** In instances where externally imposed time limits or other extenuating circumstances make it difficult to complete normal clearance procedures before a deadline, emergency clearance can be received by obtaining the approval of the Office of the Executive Director (OEX) and the OGC directly. Immediately after written clearance by each of these offices, the originator will submit a copy of the published writing for appropriate full clearance procedure. No emergency CPSC publication, however, may be released without written clearance from OEX, EXPA and OGC. For press releases, emergency clearance can be received by obtaining the approval of EXPA, OEX, OGC and the Office of the Chairman.

**c.** **CLEARANCE FOR PRESS RELEASES.**

**(1)** **Headquarters Offices.** EXPA is the coordinating staff unit for clearance of all press releases originating in headquarters offices. After a draft press release has been approved by the originator's Office Director, AED or delegate, the originating headquarters staff will transmit the draft to EXPA for review and clearance. EXPA will arrange clearance in accordance with paragraph 7.a. or 7.b. of this directive. Drafts are provided to all Commissioners offices. Final clearance must be obtained from the Office of the Chairman. Approval for press releases involving life threatening (Class A) hazards must be obtained from the Commission.

**(2)** **Regional Offices.** EXPA is the coordinating staff unit for clearance of all press releases originating in Regional Offices. After a draft press release has been approved by the Regional Director (or delegate), the originating Regional Office will transmit the draft to EXPA for review and clearance. EXPA will arrange clearance in

4

accordance with paragraph 7.a. or 7.b. of this directive.  Drafts are provided to all Commissioners offices.  Final clearance must be obtained from the Office of the Chairman.  Approval for press releases involving Class A hazards must be obtained from the Commission.

**d.**    **CLEARANCE FOR MEDIA CONTACTS.** Under the Consumer Product Safety Act, Congress charges the Commission to provide product safety information to consumers in a manner that is consonant with the disclosure safeguards specified in section 6(b) of that Act.  In furtherance of this responsibility, the Commission endeavors to keep the public advised of its activities in the belief that informed consumers can better protect themselves from unsafe consumer products.  It is the policy of the Commission to promote free and open press relations.  A critical aspect of achieving this goal is the Commission's day-to-day contact with the media.  In this regard, meaningful local and national media contact must evolve from trust and respect earned through open, responsive, and ongoing contacts.  Simply put, the sharing of product safety news and information with consumers depends on an effective, sound policy for handling contacts with the media.  Toward this end, it is critical to define as a matter of official Commission policy, the respective roles of Field and Headquarters staff.

**(1)**    **Field.**  It shall be within the **discretion** of the Commission's regional directors or their designated staff to:

**(a)**    Share product safety information -- such as press releases, fact sheets, project hazard updates, injury data, consumer alerts, and information and education material -- with the media in their regions.

**(b)**    Respond immediately to all media inquiries with publicly available information with respect to specific hazard matters and ongoing agency activities.  Inquiries that cannot be responded to immediately shall be researched and prompt response made within the same day when practical.

**(c)**    Initiate meetings, briefings and tapings with newspaper editors, journalists, TV and radio producers, on-air reports, etc., to discuss upcoming CPSC programs and provide background information, visuals and story ideas for immediate and future use.

**(d)**    Refer media inquiries relating to matters of potential national exposure of high-level Commission policymaking (e.g., agency budget, Congressional testimony, export policy, 6 (b) policy) to EXPA.  If the Director of EXPA determines that any such matter requires notification to any Commissioner (including the Chairman), then the Director will notify all Commissioners immediately.

**(2)    Headquarters.**  Inquiries from the news media received by headquarters' staff (other than Commissioners' offices), must be referred to EXPA.  EXPA will respond directly, or coordinate a response from the staff person (e.g., AED/OD, project manager, analyst, economist, attorney, etc.), who is most substantively knowledgeable about the matter raised.  Except that the following persons may respond, directly in person or by phone, to any press inquiry they believe to be particularly within their special area of expertise: Executive Director, General Counsel, and for purposes of responding to scheduling inquiries only, the Commission Secretary.  Upon so doing, they shall alert EXPA to facilitate such coordination as may be needed or appropriate.  If the Director of EXPA determines that any such matter requires notification to any Commissioner (including the Chairman), then the Director shall notify all Commissioners immediately, through the appropriate channels.

**(3)    All Commission Personnel.**  Enforcement actions not yet announced or ongoing  enforcement or compliance actions involving a specific company will not be disclosed under any circumstances.

**e.    CLEARANCE FOR INFORMATION PRESENTED BY INDIVIDUALS**

**(1)    Speeches.**

**(a)**    If a staff member is to deliver a speech, the staff member will advise EXPA of the topic, date, and intended audience for the speech.  This information must also be given to the speaker's AED/OD for planning purposes.  The speech must be submitted to the speaker's AED/OD for clearance in accordance with paragraph 7 of this directive.

**(b)**    Unless the Commission has approved the text of a particular speech or unless OGC determines that the nature of the speech is such that a disclaimer is not necessary, the staff member must incorporate a disclaimer to the effect that although the speaker is present in an official capacity, the

views expressed concerning Commission programs and policy are personal and do not necessarily reflect the views of the Commission. In addition, speeches must not be made on matters in litigation and must not name products or manufacturers or private labelers unless clearance has been provided, particularly by OGC.

**(2)** **Articles Signed by Individuals.** Articles for publication in outside journals must be submitted for routine clearance in accordance with paragraph 7 of this directive if (1) the article concerns the CPSC or matters related to CPSC activities and (2) the staff member-author's name and his/her CPSC employment are mentioned. Unless the Commission has approved the text of the article or unless the OGC determines that the nature of the article is such that a disclaimer is not necessary, a disclaimer must be included by the author and must state that the views expressed are not necessarily the views of the Commission.

**(3)** **Articles That Do Not Concern the CPSC.** These articles are not subject to this directive but are subject to the Commission's regulation on employee standards of conduct, 5 C.F.R. § 8101.103.

**f.** **REQUIREMENTS FOR NOTICES TO ACCOMPANY ALL STATEMENTS.**

**(1)** **Copyright and Publication.** Letters to publishers transmitting articles written by CPSC employees in the course of official duties must make the following points:

**(a)** The work and the article were prepared in the course of the author's official duties as an employee of CPSC.

**(b)** Title 17 U.S.C. Section 105 provides that there can be no copyright in a United States government publication; therefore, the author is unable to transfer to the publisher any copyright in the article.

**(c)** The cover letter should request that the following legend appear as a footnote in the article:

"This article was written by _____, (title), of the Consumer Product Safety Commission. Since it was written by Mr./Ms. in his/her official capacity, it is in the public domain and may be freely copied or reprinted."

**(2)    Disclaimers.**

    **(a)**    Unless OGC determines that the nature of the speech is such that a disclaimer is not necessary, for all oral statements (such as speeches, media appearances, and news conferences), except as provided in paragraph 10.a., the speaker must include a disclaimer to advise that, although the views are those of the speaker in his/her official capacity, they are not necessarily the views of the Commission.

    **(b)**    Unless OGC determines that the nature of the publication is such that a disclaimer is not necessary and except as provided in paragraph 10.b., a disclaimer must be used in all outside publications in which an employee uses his or her official title or states an affiliation with the Commission. The disclaimer shall read as follows: "The opinion expressed by_____, an employee of the Consumer Product Safety Commission, does not necessarily represent the views of the Commission."

**g.    EXCLUSION FROM CLEARANCE PROCESS.**

**(1)    Commissioners.**  Section 6(d)(2) of the CPSA provides that the provisions of Section 6(b) (which include section 6(b)(6)) shall apply whenever information is to be disclosed by the Commission or any member of the Commission.  Therefore, Commissioners are urged to refer statements they and their staffs make to appropriate Offices/Directorates for technical, program and legal review.

**(2)    Office of Congressional Relations.**  Commission initiated statements and correspondence by the Office of Congressional Relations are excluded when addressed to duly authorized committees or subcommittees of the Congress or the Chairman (or ranking minority member) of a committee or subcommittee of Congress acting pursuant to committee business and having jurisdiction over the matter which is the subject of the information requested.  Consultation with appropriate Offices/Directorates, including OGC, is customary.

**(3)    Office of the Secretary.**  The public calendar prepared weekly by the Office of the Secretary, Commission agendas, and records of Commission action are not subject to these procedures.

**(4)    Other Excluded Communications.**  Discussions at Commission meetings, correspondence responding to inquiries, and briefing packages placed in the public reading room are not subject to these

procedures.  Briefing packages are subject to an extensive clearance procedure whereby each Directorate, the Executive Director, and OGC review the package before it is transmitted to the Commission. That review ensures that the information in the package is accurate and not misleading.

(5)    **Statements Made Outside the Scope of Employment.** Writings, speeches, or publications made by staff members outside the scope of their employment (i.e., those which do not relate to Commission policies, objectives, or operations) are not subject to these clearance procedures.  However, where the authors identify themselves as Commission employees, they will use the disclaimer statement provided in paragraph 11b.(2).  (See 5 CFR § 8101.103 Supplemental Standards of Ethical Conduct for Employees of the Consumer Product Safety Commission for guidance on outside writing and similar activities and for accepting compensation for outside employment).

h.    **JOINT PROJECTS**

(1)    **Definition.**  A joint project is any project where an outside group, with some degree of CPSC involvement, produces any audio, visual, internet, written or other material or program for the public. An outside group may be non-profit, a company, a trade association, another government agency, or any other entity.  Joint projects with CPSC must be primarily geared toward the Commission's safety mission.

(2)    **Clearance.**  Any material, in any form, to be disseminated to the public must be 6(b) cleared in accordance with paragraph 7.

(3)    **Approval of Concepts.**  Joint project concepts should be approved by OEX in consultation with Commissioners Offices and OGC <u>before</u> they proceed to be developed.   Outside groups/partners should understand that materials developed after concept approval would also require approval.

(4)    **CPSC Name/Logo.**  All individual materials to be disseminated as part of the project, including a showing of how the CPSC name and/or logo will be used, shall be approved by a majority of Commissioners.  Approval may be obtained on a Form 120 (See Appendix), or by ballot vote (this will depend on nature and extent of Commission involvement).

**(5)    CPSC Endorsement.**  No material to be disseminated using the CPSC name and or logo should either expressly or by implication be seen as endorsing or approving a particular product or company producing or selling a consumer product.  Thus, material produced with a company that manufactures or sells consumer products must be very carefully scrutinized.

**(6)    Requests for Use of Commission Name/Logo.**  This applies to requests that come in from outside for use of Commission name or logo on website or other material. Procedurally, requests should be sent to the Commission by memo through OEX and OGC containing a recommendation from the staff with a ballot vote.  If a majority of the Commission does not approve, the request will be denied. The Commission will examine the request to ensure that the way in which its name or logo will be used is appropriate. There must be no endorsement or indication of approval of a consumer product or company producing or selling a consumer product, either expressly or by implication, in the way the CPSC name or logo will be used.


_____[s]_____        _____1/16/03_____
**Patricia Semple**                        **Date**
**Executive Director**


Appendix A – CPSC Form 120
Appendix B – Commission Policy On Linking To Nongovernment Websites